**<u>EXHIBIT B</u>**

DISTRICT OF COLUMBIA

COURT OF APPEALS


PATRICK HEWITT,

        Petitioner:


    vs.                  No. 01-CF-1121


UNITED STATES OF AMERICA,

        Respondent:


MOTION TO RECALL THE MANDATE DUE TO JUDICIAL ERROR/

MISCONDUCT BY THE HONORABLE RUSSELL CANAN, ASSOCIATE

JUDGE FOR THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

_____

_____


PATRICK HEWITT, PRO-SE
USP-LEWISBURG
P. O. BOX 1000
LEWISBURG, PENNSYLVANIA 17837

### Judicial Notice Requested
### Concerning the Supreme Court's Recent Decision
### Which is a New Intervening Law Overturning Clearly
### Established Federal Law

In the recent decision by the Supreme Court of the United States, in the case of **Crawford v. Washington**, 541 U.S. ___, 158 L.Ed.2d 177, 124 S.Ct. (2004) it was held:

> "[T]hat the playing, at the accused trial, of the wife's tape recorded statement violated the accused Sixth Amendment right to be confronted by the witnesses against him, as (1) where testimonial evidence was at issue, the Sixth Amendment demanded unavailability and a prior opportunity for cross-examination; and (2) the state;s admission of the wife's testimonial statement against the accused, despite the fact that he had had no opportunity to cross-examine her, [i.e., in any sort of judicial proceeding whatsoever; especially, in the instant case, where Movant has been alleged by the government to have engaged in a literal and figurative history of domestic violence and/or abuse against the deceased victim, Jacqueline Glover] **alone was sufficient to make out a violation of the Sixth Amendment.**"

This decision was of historical import as it effectively overruled the prior precedent of **Ohio v. Roberts**, 448 U.S. 56, 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980) which held:

> "(1) [a] defendant's right under the Federal Constitution's Sixth Amendment, to be confronted by the witnesses against the defendant did not bar admission, at a criminal trial, of an unavailable witness' statement against the defendant if the statement bore indicia of reliability; and (2) to meet this test, evidence had to (a) fall within a firmly rooted hearsay exception, or (b) bear particularized guarantees of trustworthiness."

### The Washington Post Daily Newspaper, Dated Sunday, December 3, 2000, [Article Entitled FATAL FLAWS - The District's Homicide Crisis - Three Names Behind the Case Numbers

HOMICIDE NO. 96-693:  "My Boyfriend is Beating Me Up."

'At 1:51 a.m. on June 20, 1996, the 911 call crackled over the

1

D. C. police communications airwaves:  "Can I have the police at 3707 New Hampshire Avenue, please?" a frantic Jacqueline Glover asked. "My boyfriend is beating me up... And this is not the first time."

Twenty-nine minutes passed before D.c. officers arrived, according to internal police records obtained by the Post.  Fourth District officer Evans Carter knocked on the front door of Glover's apartment in Northwest.  No one answered.  He asked a  dispatcher to call Glover's home.*

'As I stood by the front door I could hear the phone inside the residence continue to ring,' Carter said in a sworn affidavit this year.  'The dispatcher advised me that no one was answering. I once again knocked on the door and checked around the back for any point of entry.  After several minutes of this I cleared the run and advised the dispatcher that the female was unable to be located and contracted.'

Two days later, Glover's decomposing, 6 foot corpse was found sprawled in a pool of blood in the bathroom.  She was 30, a bubbly woman who enjoyed dancing in nightclubs** and shopping at outlet malls.  Her black-and-gray painted fingernails were broken,** one of many signs of a struggle.  The telephone receiver rested on her lower left leg.  She had been beaten and shot in the arm and chest.

The only suspect was her boyfriend of four months, Patrick Hewitt.  He was possessive and hot-headed, Glover's frinds say, and she said he beat her.  A friend said he saw Hewitt point a gun at Glover and tell her:  "I will shoot you.  I will kill you."

---

* If ever exigent circumstances existed in this particular case, it was at this point that the Metropolitan Police Department Officer Evans Carter, based upon his experience, training, and probable cause, effected a forcible entrance into the apartment of Glover; especially in view of the fact that her 911 call alleged that she was being beaten...

**DNA typing, sometimes called "DNA fingerprinting," should have been employed by the MPD officers and its detectives to ascertain whether or not Hewitt was or was not a viable suspect, why wasn't it?

Still, it took police three months to get an arrest warrant," said Detective Brett Smith, who is investigating the case. [Comparing fragments of **deoxyribonucleic acid (DNA)** from a known person with fragments associated with a crime scene, such as any samples possibly recovered from underneath Jacqueline Glover's broken fingernails, would have reliably been utilized to either exclude Patrick Hewitt as a possible source of crime-related **DNA**. or to include him as a possible source.)***

"You've got to gather enough facts to get an arrest warrant," said Detective Brett Smith, who is investigating the case.  Smith said he was the lead detective on the case for the first 10 to 12 hours and then was removed for "internal political reasons."  After several months the case was reassigned to him.  Asked if he knew whether police were searching for Hewitt immediately after the slaying, Smith said, "I don't know."

Within a month, Hewitt fled to London, where he met Lorraine Stamp, a big-boned Jamaican woman in her thirties, at a reggae party. They lived together for four years in Stamp's cramped four-room, government-funded apartment in South London with her son Tevin, now 4.

"He looked after my son and kept the flat for 16 months while I was away," Stamp said, referring to a prison stint she served for drug charges.  "My son calls him Daddy."

---

*** Trial Counsels, Rapping & Carrington, failure to conduct an adequate factual and legal investigation into the strengths and merits of the government's case in chief against thier client was deficient under the standard as articulated by **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 80 L.Ed.2d 674 (1984).

Last spring Stamp gave Hewitt money for a ticket to return to the United States. "He always talked about wanting to go back to America," Stamp said. "He liked America more than England."

On March 4, Hewitt landed in New York. U.S. immigration officials were suspicious of the unusual thickness and poor lamination of the photo on his passport, which was in the name of Glen Martin Goodwin. They deported him to England for having a "forged or altered" passport.

Smith said Hewitt was fingerprinted but immigration sent him back to London before the results arrived from the FBI. "They had no idea he was wanted for murder," Smith said.

When the FBI results got to England the next day, Hewitt was already being detained in the passport matter. He was arrested on a charge of murder after admitting to using the alias of Patrick Hewitt.

Last month, he was extradicted to the United States, where he is now in the D. C. Jail, awaiting trial. Hewitt declined to be interviewed.'"

It should be noted that, Ms. Lorraine Stamps, never once referred to Patrick Hewitt being in possession of and/or pointing nor threatening her with a weapon during the four years they lived together. Likewise, Ms. Stamps never once alluded to any physical and/or domestic violence/domestic abuse where Patrick Hewitt was concerned.

## DISCUSSION

In the instant case before bar, the Petitioner avers that the Honorable Court abused its discretion for the following reasons:

"A sentencing Judge exceeds his proper authority when he inflicts punishment that the jury's verdict alone does not allow, as the jury has not found all the facts which the law makes essential to the punishment."

" The Sixth Amendment right to a trial by jury is no mere procedural formality, but rather, is a fundamnetal reservation of power in our constitutional structure meant to ensure the people's ultimate control in the judiciary."

" The Sixth Amendment right to a jury trial is not a limitation on judicial power,  but a reservation of jury power that limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.".

" Due Process commands that no man shall lose his liberty unless the government has borne the burden of convincing the fact finder of his guilt; to such end, the reasonable doubt standard is indispensable, for it impresses on the tier of fact finders the necessity of reaching a substantive state of certitude on the facts in issue, and the use od such standards is indispensable to command the respect and confidence of the community in application of the criminal law, it being critical that the moral force of the criminal law not be deluded by standard proof which leaves people in doubt wheather innocent men are being condemmed".

" The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged".

" The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The Demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, (through) its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the tier of all the essential elemants of guilt".

" The Supreme Court Re Winship,397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct.1068. "Lest there remain any doubt about the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

" The forgoing was supported by the Supreme Court in Apprendi v. New Jersy 530 U.S. 466, 490, 120 S.Ct.2348, 147 L.Ed.2d 435, that other than the fact of prior conviction, any fact that increases the penalty beyond the proscribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt."

" The recent ruling from the Supreme Court in Blakely v. Washington,No. 02-1632 WL-1402697, June 24, 2004. the Supreme Court reversed and remanded citing a violation of the defendant's Sixth Amendment Rights to trial by jury.".

" The Honorable Court stated,:

"This case requires us to apply the rule we expressed in **Apprendi v. New Jersy 530 U.S. 466, 490, 120 S.Ct.2348, 147 L.Ed.2d 435 (2000);** " Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proven beyond a reasonable doubt." This rule reflects two long standing tenents of common law criminal jurisprudence: that the truth of every accusation" against a defendant "should afterward be confirmed by the unanimous suffrage of twelve of his equals and neighbors," Blackstones, Commentaries on the laws of England 343 (1769). and that "an accusation which lacks any particular fact which the law makes essential to the punishment is.....
...no accusation within the requirement of the common law, and it is no accusation in reason," J.Bishop, Criminal Procedurs§ 87,p.55(2nd ed. 1872), These principles have been acknowledged by courts and treatises since the earliest days of graduated sentencing: we comlied the relivent authorities in **Apprendi** see 530 U.S. at 467-483, 489-490, n 15; id at 501-518 U.S. (Thomas, J. Concurring)and need not repeat them here.".

" Facts that historically have been takne into account by sentencing judges to assess the sentence within a broad range-such as drug quantity, role in the offense, risk of bodily har,---all must be charged in an indictment and submitted to a jury, **In Re Winship, 387 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)** simply because it is the legislature, rather than the judge, that constrains the extent to which such facts may be used to impose a sentenc within the pre-existing stat-utory range.

7

In Supreme Court Justice O'Conners decent she wrote:

" It is no answer to say that todays opinion impacts only Washington's scheme and not others, such as, for example the Federal Sentencing Guidelines. See ante, at 9,n.9 (The Federal Sentencing Guidelines are not before us, and we express no opinion on them); cf. **Apprendi, supra, at 496-497** (claming not to overrule **Walton supra** soon thereafter overrulled in **Ring**); **Apprendi supra at 497, n.21**(reserving question of Federal Sentencing Guidelines). The fact that the Federal Sentencing Guidelines are promulgated by an administrative agency normally located in the Judicial Branch is irrelevant to the majority's reasoning. The Guidelines have the force of law, ess **Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 589 (1993) and Congress has unfettered control to reject or accept any particular guidelines, Mastretta, 488 U.S. at 393-394.".**

"18 U.S.C. § 3553(b) authorizes and impliments in the Federal Sentencing Guidelined § 5K2.0 departure regime, The Federal Sentencing guidelines require an increase in the sentencing range upon specified factual findings see USSG § 2K2.1 (increase in offense level for firearms, offenses, based on number of firearms involved, whether possession was in connection with another offense, whether the firearm was stolen); § 2B1.1 (increase in offense level for financial crimes based on amount of money involved, number of victims, possession of weapons); 3C1.1 (general increase in offense level for obstruction of justice).

" The structure of the Federal Guidelines likewise does not, as the Government half-heartedly-suggests, provide any grounds for distinction. Washington's scheme is almost identical to the upward departure regime established bu 18 U.S.C. section 3553(b) and implimented in USSG section 5K2.0. If anything, the structural difference that do exist make the Federal Guidelines more vulnerable to attack"...

All of the enhancements that increase the base offense level in the current federal sentencing guidelines are uncons-titutinal: **aggrivating role, official victim, drug amount, loss amount, leadreship role, gun enhancements.**

It is the Movant's contention that all the enhancements contained within the Pre-Sentence Report, used to enhance the current sentence are unconstitutionally applied in the instant case before bar.The Movant suggests that he has had his Sixth Amendment Rights violated because none of the enhancements used to detrmine the current sentence was proved beyond a reasonable doubt to a jury of his peers.

The petitioners challenges to the application of the parole sysetms calculations are applicable as well as to the application of the District Courts enhancements which were applied at the original sentence where enhancements were appliedd, with the recent ruling that is applicable here the Honorable Court would be asked to review the entire case before it for a determination in favor of this petitioner.

Please note the District Of Columbia is one of the States that is mentioned in the Blakely case of the Supreme Court.

9

## TABLE OF CONTENTS

Statement of the Case..............................................Page: 1

Argument......................................................... 2

Superior Court Rules of Criminal Procedure - Rule 52(b).......... 3

Questions Presented.............................................. 3

Jury Instructions............................................... 7

Insufficient Evidence of Petitioner's Actual or Constructive
Possession of a Pistol or Firearm.  Thus the Government Failed in
its Burden of Proof as to Every Element of the "While Armed"
Crimes Charged.................................................. 8

Jury Instructions - Possession of a Firearm During a Crime of
Violence....................................................... 9

District of Columbia Official Code, 2001 Edition - Title 22
§ 224402 - Additional Penalty for Committing Crime When Armed.... 11

District of Columbia Official Code 2003 Pocket Part............. 13

Two Distinct Sentencing Errors.................................. 15

Merger Doctrine................................................ 15

"Aggravating Factors Weren't Clearly and Unambiguously Charged
in [      ] Count One of Indictment............................ 15

There was a Clear Factual Dispute as to Whether Either James
Sanders or Vincent Gholson Could Legally Consent and/or Even
Give Implied Consent to a Search via Police Activities.......... 16

Conclusion..................................................... 17

# TABLE OF AUTHORITIES

*United States v. Olano, 507 U.S. ___, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993)..................................................2

*United States v. Cotton, 535 U.S. ___, 152 L.Ed.2d 860, 122 S.Ct. (2002).....................................................2

Johnson v. United States, App.D.C., 387 A.2d 1084 (1978)............2

*Mullaney v. Wilber, U.S. U.S.Me. 1975, 95 S.Ct. 1881, 421 U.S. 684 44 L.Ed.2d 508.................................................2

*Patterson v. New York, U.S.N.Y. 1977, 97 S.Ct. 2319, 432 U.S. 197, 53 L.Ed.2d 281................................................2

Johnson v. United States, 520 U.S. 461, 466-67, 137 L.Ed.2d 718, 117 S.Ct. 1544 (1997).........................................3

*Miranda,......................................................4

*In re Winship, ..............................................5

United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1984)....................................................5

*Ring v. Arizona, ...........................................5

*Bailey v. United States, 516 U.s. 137, 133 L.Ed.2d 472, 116 S.Ct. 501 (1995)....................................................6

*Bousley v. United States, 523 U.S. 614, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998)...................................................6

*Silber v. United States, 370 U.S. 717, 8 L.Ed.2d 798, 82 S.Ct. 1287 (1962)........................................................6

*Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978)....................................6

*Brecht v. Abrahamson, 507 U.S. 619, 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993)........................................................7

*Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979)..................................................8

*Thompson v. Louisville, 362 U.S. 199, 4 L.Ed.2d 654, 80 S.Ct. 624 (infra §§ 6, 9)..........................................8

Garner v. Louisiana, 368 U.S. 157, 7 L.Ed.2d 207, 82 S.Ct. 248, (infra § 6) (1961)........................................8

Shuttleworth v. Birmingham, 382 U.S. 87, 15 L.Ed.2d 176, 86 S.Ct. 211, (infra § 8) (1965)..................................8

*Ring v. Arizona, 536 U.S. 584 (2002)................................9

*Lee v. United States, 699 A.2d 373, 382 (D.C.app. 1997)............15

Catlett v. United States, 545 A.2d 1202, 1219 (D.C. 1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989).........15

Garris, 491 A.2d at 513-514.........................................15

Byrd v. United States, 510 A.2d 1035, 1037 (D.C. 1986) (en banc).....15

*Hanna v. United States, 666 A.2d 845, 855 (D.C. 1995)..............15

*Apprendi v. New Jersey, 530 U.S. 490 (2000)........................16

*Mincey v. Arizona, 437 U.S. 385 (1978).............................16

*Thompson v. Louisiana, 469 U.S. 17 (1984)..........................16

*Flippo v. West Virginia, 528 U.S. 11, 145 L.Ed.2d 16, 120 S.Ct. 7 (1999).............................................................16

DISTRICT OF COLUMBIA
COURT OF APPEALS

PATRICK HEWITT,

        Petitioner:

v.                                          No. 01-CF-1121

UNITED STATES OF AMERICA,

        Respondent:

MOTION TO RECALL THE MANDATE
DUE TO JUDICIAL ERROR/MISCONDUCT BY THE HONORABLE
RUSSELL CANAN, ASSOCIATE JUDGE FOR THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA

### Statement of the Case

Petitioner, Patrick Hewitt, (Hereinafter, "Petitioner"), was arrested, charged, and eventually indicted for the crimes of (1) **First Degree Murder While Armed (Premeditated), 22 D. C. Code §§ 2401, 3202;  (2) Possession of a Firearm During a Crime of Violence, 22 D. C. Code § 3204(b);  Carrying a Pistol Without a License, 22 D.C. Code § 3204(a);  and (3) Assault With a Dangerous Weapon, Hammer, 22 D.C. Code § 502.**

A jury trial was held before the Honorable Russell Canan, in May of 2001.  At that time Petitioner was acquitted of [Premeditated] First Degree Murder, but was convicted of **Manslaughter While Armed, 22 D.C. Code §§ 2405, 3202, as a lesser included offense of murder.**  Likewise, Petitioner was also convicted of all the other charges as listed above.

On July 13, 2001, Petitioner was sentenced[1]/ to the maximum time on all charges, with all sentences except the misdemeanor

---

1/ See - Sentencing Hearing Transcript, dated 7/13/2002, page 32, lines 19 through 23:  "It is the judgment of the Court that for the charge of manslaughter while armed the defendant be sentenced to a period not less than fifteen years, nor more than Life, the maximum sentence allowed by law;  five years of that time is mandatory."

## Argument

Petitioner, maintians that an egregious sentencing error occurred when the Honorable Russell Canan sentenced him to "not less than 15 years, nor more than life [imprisonment]; five years of that time is mandatory,"because under the well settled and established law of the District of Columbia as codified by the D. C. Code, "[W]hoever is guilty of manslaughter shall be sentenced to a period of imprisonment **not exceeding 30 years**," therefore,**1/** the Honorable Russell Canan imposed an illegal and/or unauthorized sentence upon the Petitioner for the crime of Manslaughter, 22 D. C. Code § 2405.2/ Therefore, this sentence must be corrected in "the interests of justice and fundamental fairness," pursuant to the plain error standard articulated in **United States v. Olano**, 507 U.S. ___, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993); and **United States v. Cotton**, 535 U.S. ___, 152 L.Ed.2d 860, 122 S.Ct. (2002). Also see, **Superior Court Rules of Criminal Procedure - Rule 52(b)**; **Johnson v. United States**, App.D.C., 387 A.2d 1084 (1978).

---

**1/** Please see, **District of Columbia Official Code, 2001 Edition, Title 22 - Criminal Offenses and Penalties § 22-2105. Penalty for Manslaughter:**

> "Whoever is guilty of manslaughter shall be sentenced to a period of imprisonment not exceeding 30 years."

[Emphasis added, by Petitioner, Patrick Hewitt].

**(March 3, 1901, 31 Stat. 1321, ch. 854, § 802; May 23, 1995, D. C. Law 10-256, § 2(c), 42 DCR 20.)**

### Cross References

Committing crime when armed, additional penalty, see §§ 22-4501 and 22-4502.

### United States Supreme Court

Manslaughter,
    Burden of proof, reduction
    of murder to manslaughter
    heat of passion provocation
    see **Mullaney v. Wilber**, U.S.
    U.S.Me. 1975, 95 S.Ct. 1881,
    ~~421 U.S. 684, 44 L.Ed.2d 508.~~

Murder, reduction to manslaughter, burden of proof, see **Patterson v. New York**, U.S.N.Y. 1977, 97 S.Ct. 2319, 432 U.S. 197, 53 L.Ed.2d 281.

## Superior Court Rules of Criminal Procedure
### Rule 52(b)

In applying the "plain error" test, to wit, 'under that test, before an appellate court can correct an error not raised at trial (e.g., nor at sentencing hearing, plus Direct Appeal either) there must be (1) error (2) that is plain, and (3) that affects ... substantial [constitutionally applicable Eighth Amendment-wise] rights. **Johnson v. United States**, 520 U.S. 461, 466-467, 137 L.Ed.2d 718, 117 S.Ct. 1544 (1997) (quoting **Olano**, **supra.**, at 732, 123 L.Ed.2d 508, 113 S.Ct. 1770). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." **520 U.S., at 467, 137 L.Ed.2d 718, 117 S.Ct. 1544 (internal quotation marks omitted).**

QUESTIONS PRESENTED

I. Whether **Judicial Misconduct/Sentencing Error** occurred when the Superior Court's Trial & Sentencing Judge, The Honorable Russell Canan, incorrectly sentenced, Petitioner, Patrick Hewitt, as follows?

See - **Sentencing Hearing Transcript**, dated **Friday**, **July 13, 2002**, **page 32, lines 19 through 23:**

> "It is the judgment of the Court that for the charge of manslaughter **while armed the Defendant be sentenced to a period not less than fifteen, nor more than Life, the maximum sentence allowed by law;  five years of that time is mandatory.**"

II. Whether Petitioner's Trial & Sentencing Counsel, Jonathan Rapping, Esquire and/or Tucker Carrington, Esquire, provided grossly incompetent, as well as ineffective assistance of counsel

as well as deficient performance during (1) pre-trial proceedings, (2) during trial proceedings, and (3) especially during the Sentencing hearing proceedings, as well as (4) during post-trial period prior to the appointment of new counsel on appeal?

III.  Whether, Petitioner counsel for his Direct Appeal provided grossly incompetent, ineffective assistance, and deficient performance contrary to the counsel as guaranteed by the Sixth Amendment to the Federal Constitution of the United States of America by his failure to raise the "dead bang winner" meritorious issue of the aforementioned sentencing error by Judge Canan?

IV.  Whether the complained of errors by all counsels to the instant case, which resulted in not only one but actually two procedural defaults should have been taken notice of by the District of Columbia's Court of Appeals under the **"plain error"** standard articulated in <u>**Johnson v. United States**</u>, App.D.C., 387 A.2d 1084 (1978); <u>United States v. Olano</u>, 507 U.S. ___, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993); <u>United States v. Cotton</u>, 535 U.S. ___, 152 L.Ed.2d 860, 122 S.Ct. (2002)?

V.  Whether Petitioner was, in fact, in custody for purposes of **Miranda** when he was detained, handcuffed, and questioned repeatedly by law enforcement personnel at the airport?

VI.  Whether Petitioner's perceived domestic abuse/domestic violence history with the deceased victim, caused the Metropolitan Police Department's officers and detectives to verlook the reasona-probability that someone other than the instant Petitioner actually committed the crimes charges and/or obstructed justice by falsely implicating the Petitioner?

VII.  Whether trial counsel(s) were ineffective, incompetent and deficient in performance for failing to re-raise Petitioner's

Motion to Suppress Tangible Evidence during trial proceedings
in order to preserve this issue for appellate review and/or
postconviction purposes in a collateral attack motion?

VIII.  Whether the sufficiency of the evidence was enough as
presented by the government during trial was met as to the
government's burden of proof (e.g., the burden of production and
the burden of persuasion) as to every element of the [initial]
crime charged in the indictment and/or [the lesser included
offense charge requested prior to the jury instructions] beyond
a reasonable doubt according to **In re Winship**?

IX.  Whether the **District of Columbia Court Reform and Criminal
Procedure Act, Pub. L. No. 91-358 (1970) ("(DCCRCPA")** and **United
States v. Frady,** 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816
(1984) "cause and prejudice" standard gives a Superior Court,
Associate Judge, such as the Honorable Russell Canan, the autho-
rity to impose a sentence in excess of the facts reflected by the
jury's verdict alone, **Ring v. Arizona,** and of what was authorized
under the applicable statute(s) referenced, **D. C. Code § 22-2105?**
Judicial Notice is respectfully requested that since **D. C. Code
§ 22-3202** is a separate and distinct "enhancement penalty statute"
it to must have been, a separate and distinct sentence in addition
to, the penalty provided for the crime of manslaughter.  The Court
did not have the authority to cumulatively sentence the Petitioner
under both statutes, but rather **must have** imposed separate sen-
tences, because of the phrase "in addition to" within the **D.C.
Code § 22-3202 statutory language.**  Thus, as currently imposed
the Petitioner is serving an illegally imposed sentence, and must
be re-sentenced, however, because the initial sentencing was in

clear error statutorily speaking, the Petitioner cannot now be re-sentenced under both statutes, but rather must be re-sentenced under the **D. C. Code § 22-2105 only!**   This is pursuant to the Supreme Court's holding in **Bailey v. United States**, 516 U.S. 137, **133 L.Ed.2d 472, 116 S.Ct. 501 (1995)** and **Bousley v. United States**, 523 U.S. 614, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998) which held in an opinion by **Rehnquist, Ch. J., joined by O'Connor, Kennedy, Souter, Ginsburg, and Breyer, JJ.,** that "the accused will be entitled to a hearing on the merits of his misinformation claim, if, on remand, the accused makes the necessary showing of actual innocence to relieve his procedural default in failing to contest his...guilty [conviction] in his prior direct appeal, as (1) if the record disclosed that at the time of the [conviction] neither the accused, nor his counsel, nor the ... court correctly understood the essential elements of the crime with which he was charged, then the [conviction] was invalid under the Federal Constitution;..."

X.   Whether it was prosecutorial misconduct for the government to erroneously charge two **separate and distinct crimes in a single count of the Grand Jury Original Indictment** (e.g., D.C. Code § 22-2401 and D. C. Code § 22-3202 (i.e., Premeditated First Degree Murder;  and "additional penalty for committing crime while armed", plus whether or not this constituted either "plain error" and/or defective indictment?  See, **Silber v. United States**, 370 U.S. 717, 8 L.Ed.2d 798, 82 S.Ct. 1287 (1962);  **Monell v. New York City Dept. of Soc. Serv.,** 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).  (The Supreme Court - Notice - that the indictment [complained of] was constitutional defective although it was not raised in [either the Superior Court of the District

of Columbia;  the District of Columbia Court of Appeals, in the

instant case]  and is being raised in the local Courts herein

for the 2nd time, as it was raised for the 1st time within an

application for a writ of certiorari to the Supreme Court of the

United States, requesting **"plain error review under Brecht v.**

**Abrahamson**, 507 U.S. 619, 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993).

<u>Jury Instruction(s)</u>

Trial Transcript, Dated May 23, 2001, page 539, line 25:

THE COURT:  For Count One, the charge of **First Degree Murder**

**[page 540, lines 1 through 25]**

**While Armed.**  I am going to instruct you on this charge and also

what we call the **lesser-included offenses of Second Degree Murder**

**While Armed and Voluntary Manslaughter While Armed.**

(Judicial Notice:  It should be noted that a further sentencing

error occurred at this point, as the Grand Jury original Indict-

ment contained no actual and/or conceptually **Count One-A, second**

**degree murder while armed, nor a Count One-B, involuntary manslaugh-**

**ter while armed,** and it was judicial error to so infer to the fact-

finding jury as such by the Court.)

**[Also see pages 541 & 542].** And, on page 543, lines 16 through 25,

is where the Honorable Russell Canan, first mentions anything

about the Petitioner's use of a weapon in his jury instructions,

as he completely omitted this information in his instruction to

the jury concerning **First Degree Murder While Armed.**  Likewise,

on page 545, lines 19 through 22, the Honorable Russell Canan

again for only the second time mentioned that the Petitioner was

armed with a pistol.

### Insufficient Evidence of Petitioner's Actual
### or Constructive Possession of a Pistol or Firearm
### Thus the Government Failed in its Burden of Proof
### as to Every Element of the "While Armed" Crimes Charged

Pursuant to the Supreme Court's decision in the case of **Jackson v. Virginia**, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979) (lack of evidence supporting conviction of criminal offense as violation of due process clause of Federal Constitu tion's Fifth or fourteenth Amendment) Petitioner avers that there was totally insufficient evidence produced by the government's prosecution to prove beyond a reasonable doubt that he actually or constructively possessed any pistol or firearm at any given time, much less at the time of the crimes charged. In support of this allegation Petitioner invokes the "**Totally Devoid of Evidentiary Support**" Rule:  **Thompson v. Louisville**, 362 U.S. 199, 4 L.Ed.2d 654, 80 S.Ct. 624 (infra §§ 6, 9); **Garner v. Louisiana**, 368 U.S. 157, 7 L.Ed.2d 207, 82 S.Ct. 248, (infra § 6) (1961);  **Shuttlesworth v. Birmingham**, 382 U.S. 87, 15 L.Ed.2d 176, 86 S.Ct. 211, (infra § 8) (1965).

In the following cases the Supreme Court interpreted the "totally devoid of evidentiary support" rule to mean that due process is violated when a criminal defendant is convicted without any evidence to prove a basic element of the crime in question.  **Johnson v. Florida**, 391 U.S. 596, 20 L.Ed.2d 838, 88 S.Ct. 1713, (infra § 13) (1968);  **Vachon v. New Hampshire**, 414 U.S. 478, 38 L.Ed.2d 666, 94 S.Ct. 664 (infra § 7) (1974); **Fiore v. White**, 531 U.S. 225, 148 L.Ed.2d 629, 121 S.Ct. 712 (infra § 10) (2001);  **Jackson v. Virginia**, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781, reh den 444 U.S. 890, 62 L.Ed.2d

126, 100 S.Ct. 195 (infra § 5) (1979).

### Jury Instruction - Possession of a Firearm During a Crime of Violence

Trial Transcript, Dated May 23, 2001, page 546, lines 8 through 25.

"The essential elements to this offense each of which the government must prove beyond a reasonable doubt are one, that the [Petitioner] possessed a pistol. Two, that he possessed the pistol while committing a crime of violence. Three, that he possessed the pistol knowlingly and intentionally. This means consciously, voluntarily, and on purpose, not mistakenly, or accidentally, or inadvertently. Again, the term pistol means any firearm with a barrel less than twelve inches in length."

Judicial Notice: Again, the Honorable Russell Canan, has committed a judicial error in his jury instructions because the term "any firearm with a barrel less than twelve inches in length" can be referring to a revolver; also known as a single shot weapon. Plus, there are semi-automatic and/or fully automatic weapons on the market that are less than twelve inches in length, which could never be considered mere pistols; such as the **Heckler & Koch MP-5, et cetera.**

Trial Transcript, Dated May 23, 2001, page 547, lines 5 through 12.

It is to be noted that the Honorable Russell Canan stated as follows:

> "That is one of those three charges is what we call
> predicate charges. You would have to find the
> Defendant [guilty] of one of those three charges to
> even consider possession of a firearm during a crime
> of violence..."

What is abundantly clear is this, from even a cursory reading of the Court's jury instructions, not once did the Court give the statutory language necessary for the jury instruction on

D. C. Code 22 - § 3202 - **"Additional Penalties While Armed.** Thus, this "charged" criminal statute, while it might be said to have been ambiguously and partially cited in the Grand Jury's indict-ment in a single count with **D.C. Code 22 - § 2401**, clearly is a defective notice, and likewise clearly wasn't submitted to a jury as the fact-finder and proven by a beyond a reasonable doubt standard, nor was it reflected in the facts from the jury's ver-dict alone.  **Ring v. Arizona**, 536 U.S. 584 (2002).

Since [i]t was the fact-finding jury's duty to accept the law as the court state[d] it to them, and to consider all the court's instructions as a whole, the court's failure to give the statutory language instruction pursuant to **D.C. Code 22 - § 3202** invaded the province of the jury, thus denying the Petitioner his due process right protections as well as his equal protec-tion under the law.  Just as the jury could not disregard any of the court's instructions, likewise they could not infer any instructions not given by the court either.

## District of Columbia Official Code, 2001 Edition
## Title 22 § 22-4502
## Additional Penalty For Committing Crime When Armed

(a)  Any person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including sawed off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles):

(1)  May, if such person is convicted for the first time of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment and shall, if convicted of such offenses while armed with any pistol or firearm, be imprisoned for a mandatory minimum term of not less than 5 years; and

(2)  Shall, if such person is convicted more than once of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a minimum period of imprisonment of not less than 5 years and a maximum period of imprisonment which may not be less than 3 times the minimum sentence imposed and which may be up to life imprisonment and shall, if convicted of such second offense while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 10 years.

(b)  Where the maximum sentence imposed under this section is life imprisonment, the minimum sentence imposed under subsection (a) of this section may not exceed 15 years imprisonment.

(c)  Any person sentenced pursuant to paragraph (1) or (2) of subsection (a) above for a conviction of a crime of violence while armed with any pistol or firearm, shall serve a mandatory minimum term of 5 years, if sentenced pursuant to paragraph (1) of subsection (a) of this section, or 10 years, if sentenced pursuant to paragraph (2) of subsection (a) of this section, and such person shall not be released on parole, granted probation, or granted suspension of sentence, prior to serving such mandatory minimum sentence.

(d)  Except as provided in subsection (c) of this section, any person sentenced under subsection (a)(2) of this section may be released on parole in accordance with Chapter 4 of Title 24, at any time after having served the minimum sentence imposed under that subsection.

(e)(1)  Subchapter 1 of Chapter 9 of Title 24 shall not apply with respect to any person sentenced under paragraph (2) of subsection (a) of this section.

(2)  The execution or imposition of any term of imprisonment imposed under paragraph (2) of subsection (a) of this section may not be suspended and probation may not be granted.

(f) Nothing contained in this section shall be construed as reducing any sentence otherwise imposed or authorized to be imposed.

(g)  No conviction with respect to which a person has been pardoned on the ground of innocence shall be taken into account

in applying this section.2/

## District of Columbia Official Code 2003 Pocket Part

§ 22-4502.  Additional Penalty For Committing Crime When Armed.  (a)(1):

> "May, if such person is convicted for the first time of having so committed a crime of violence, or a dangerous crime in the district of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to, and including, 30 years for all offenses except first degree murder while armed, second degree murder while armed, first degree sexual abuse while armed, and first degree child sexual abuse while armed, and shall, if convicted of such offenses while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 5 years;  and
>
> (2)  Shall, if such person is convicted more than once of having so committed a crime of violence or dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment of not less than 5 years and except for first degree murder while armed, second degree murder while armed, first degree sexual abuse while armed and first degree child sexual abuse while armed, not more than 30 years, and shall, if convicted of such second offense while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 10 years.

(June 8, 2001, D. C. Law 13-302, § 6(a), 47 DCR 7249;  June 19, 2001, D. C. Law 13-313, § 21(b)(1), (2), 48 DCR 1873).

2/  (July 8, 1932, 47 Stat. 560, ch. 465, § 2;  December 27, 1967, 81 Stat. 737, Pub. L. 90-226, title VI, § 605;  July 29, 1970, 84 Stat. 600, Pub. L. 91-358, title II, § 205;  March 9, 1983, D.C. Law 4-166, §§ 3-7, 30 DCR 1082;  December 7, 1985, D.C. Law 6-69, § 9, 32 DCR 4587;  July 28, 1989, D.C. Law 8-19, § 3(b), 35 DCR 2844;  May 8, 1990, D.C. Law 8-120, § 3(b), 37 DCR 24;  May 21, 1994, D.C. Law 10-119, § 15(a), 41 DCR 1639).

The instant question is whether or not the [Petit] Jury found the Petitioner guilty of simple manslaughter initially without consideration of the while armed component enhancement statute?  For although the jury's verdict alone only reflects a finding of guilt to manslaughter the Court made factual findings via preponderance of the evidence standard and sentenced the Petitioner to "**not less than fifteen, nor more than Life, the maximum sentence allowed by law**" for the charge of manslaughter while armed, although the "while armed" component had no life whatsoever, until the Petitioner initial conviction for the crime of manslaughter itself.  The Court was then required by statute to explicitly state the "**in addition to the penalty provided for such crime, [you, Patrick Hewitt are hereby sentenced to (i.e., a period of imprisonment) which may be up to Life imprisonment, [and since you, Patrick Hewitt were armed with a pistol or firearm, you are to be imprisoned for a mandatory minimum term of not less than five years.**"] The Superior Court's failure to do so renders his sentence of '**not less than fifteen years, nor more than Life, the maximum sentence allowed by law;  five years of that sentence is mandatory**' null and void according to the applicable statutory laws of the two separate statutes pursuant to the **District of Columbia Official Code.**

A further sentencing error occurred when the Honorable Russell Canan, stated that: "**It is the judgment of the Court that for the charge of possession of a firearm during a crime of violence the [Petitioner] be sentenced for a period of not less than five, no more than fifteen, consecutive to any other sentence he may be serving, and that five years is mandatory by operation of law. This consecutive is a decision this Court has made.**"

## Two Distinct Sentencing Errors

As in the first sentencing on Count One, the Honorable Russell Canan, erroneously stated:  ..."**for the charge...**" when, in fact, he should have correctly stated:  "**... for the conviction...**" as it is without doubt that no one who is a citizen of the United States of America, or even no one who is not a citizen as the Petitioner certainly is not an American citizen, can be **legally sentenced to a single day of incarceration "for the charge"** of anything whatsoever.

## Merger Doctrine

Pursuant to the District of Columbia court of Appeals holding in **Lee v. United States**, 699 A.2d 373, 382 (D.C.App. 1997) ("[A]ll (manslaughter convictions relating to a single victim merge, and all of the (manslaughter) convictions merge with their underlying felonies, (quoting **Catlett v. United States**, 545 A.2d 1202, 1219 (D.C. 1988), cert. denied, 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989); **Garris**, 491 A.2d at 513-514.  Also see, **Byrd v. United States**, 510 A.2d 1035, 1037 (D.C. 1986) (en banc).  Each of the Petitioner's firearms convictions merge, pursuant to **Hanna v. United States**, 666 A.2d 845, 855 (D.C. 1995).

### "Aggravating Factors Weren't Clearly and Unambiguiosly Charged in [coun] Count One of Indictment

Thus, Petitioner, Patrick Hewitt, further claims that in light of the Supreme Court's decision in **Ring v. Arizona**, 536 U.S. 584 (2002), the [?] determination of the existence of facts (e.g., "aggravating factors") by the trial judge based upon a preponderance of the evidence standard [especially since there was no reliable forensic evidence showing the possession of any pistol or firearm by the Petitioner], [where] the presence of such facts

served to increase his maximum sentence authorized by statute beyond the 30 years statutory maximum otherwise permitted under the applicable D. C. Code § 22-2105, without a [reflected by the jury's verdict] finding of the existence of such facts by the fact-finding jury based upon a beyond a reasonable doubt standard, violated his constitutional rights under the new rule of constitutional law announced by **Apprendi v. New Jersey**, 530 U.S. 490 (2000).

### There Was A Clear Factual Dispute As To Whether Either James Sanders or Vincent Gholson Could Legally Consent And/Or Even Give Implied Consent To A Search Via Police Activities

**Since** neither James Sanders nor Vincent Gholson were listed as leasholders and/or renters of the apartment in question, nor did they have the right to even allow police officers inside the apartment whereby the inevitable discovery doctrine could be argued to apply, at the very least both the holster and hammer found by such illegal search and seizure should have been suppressed.

The Supreme Court has held in **Mincey v. Arizona**, 437 U.S. 385 (1978) that "there is no "murder scene" exception to the warrant requirement of the Constitution; **Thompson v. Louisiana**, 469 U.S. 17 (1984); and **Flippo v. West Virginia**, 528 U.S. 11, 145 L.Ed.2d 16, 120 S.Ct. 7 (1999) which decided that: "Police held not entitled to make warrantless search of anything and everything found within homicide crime scene area, where no exceptions to warrant requirement of Federal Constitution's Fourth Amendment are invoked."

## Conclusion

**WHEREFORE,** for the foregoing reasons cited, precedent case law, both statutory and constitutional, the instant Petitioner, Patrick Hewitt, pro-se, respectfully requests that this Honorable District of Columbia Court of Appeals consider granting his reques to recall the mandate, and such further relief as this Court might deem necessary and just.

Respectfully submitted,

PATRICK HEWITT, PRO-SE LITIGANT

SUBSCRIBED TO AND SWORN BEFORE me this 30 day of June, 2004.

My Commission Expires:_____.

NOTARY PUBLIC

"W. ZEGARSKI/PAROLE OFFICER"
AUTHORIZED BY ACT OF JULY 7, 1955
TO ADMINISTER OATHS
(18 U.S.C. 4004)